Willie Ray SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14904.

United States Court of Appeals Ninth Circuit.

May 22, 1956.

Richard M. Grossberg, Sacramento, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

Smith appeals from his conviction of violating 18 U.S.C. § 2312 which prohibits transporting a motor vehicle in interstate commerce knowing it to have been stolen.[1] He argues that the term "stolen" means no more than common law larceny,[2] and that the evidence is not sufficient to support a verdict of guilty based on such a construction of Section 2312.

One Riggs purchased a 1949 Ford under a conditional sales contract which gave him possession and put title in the Home Finance Co. of Phoenix, Arizona, Riggs owned two other automobiles and planned to move from Arizona to Oklahoma. Appellant Smith agreed to drive the 1949 Ford on the trip and did so. After arriving in Oklahoma, Riggs decided he could not keep up the payments on the 1949 Ford. Riggs gave Smith his permission to drive the 1949 Ford back to Phoenix where Smith was to contact the Home Finance Co. immediately and either turn over the car or assume the payments himself.

Smith drove the car to Phoenix, but he failed to contact the Home Finance Co. at any time or make any payment under the contract. Shortly after his return to Phoenix he drove from Arizona to Alabama, then to Missouri, Indiana and Michigan and returned to Phoenix via Indiana and Missouri. During the trip to the South and the Midwest Smith removed the car's Arizona license plates and replaced them with ones from Missouri. He then proceeded from Arizona to California where he was arrested and charged with interstate transportation of

---

1. Section 2312 provides: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 806."

2. This court expressly reserved decision on the construction of the term "stolen" in Section 2312 in United States v. Bremer, 9 Cir., 1953, 207 F.2d 247. See also, United States v. Kratz, D.C.D.Neb.1951, 97 F.Supp. 999.

a motor vehicle knowing it to have been stolen.

■ The United States argues that we need not reach the question of whether Section 2312 is applicable to situations of embezzlement or is confined to cases of larceny. It contends that there was sufficient evidence from which the jury could have found that Smith intended to convert the car at the time he took possession of it from Riggs. Such a taking from a bailee would constitute larceny.

However, the jury was instructed that it could find Smith guilty if he had the intent to permanently deprive the owner of possession when he first took possession of the car or if that intent were formed at some later time. Even though the evidence might be sufficient to support a conviction under the larceny instruction, we cannot tell whether the jury actually did convict on this theory. If it concluded that Smith's intent to steal the car was formed *after he took possession,* and if embezzlement is not included within Section 2312, there was insufficient evidence on which to base his conviction. Therefore, the question of the meaning of the term "stolen" in Section 2312 must be determined. Cf. Stein v. People of State of New York, 1953, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522.

■ The circuits are divided over the scope of the term "stolen" in Section 2312. Smith urges this court to side with those circuits which equate "stolen" with common law larceny and refuse to extend it to cover other theft crimes.[3] This would require the Government to prove he intended to convert the Ford to his own use *at the time he took possession of it* from Riggs,[4] a difficult task in this case. On the other hand, the Government naturally asserts that the cases broadly construing "stolen" to include all the theft crimes are better reasoned.[5] Under such a view the Government could sustain its conviction if the evidence supported a verdict that Smith, although he took the car with honest motives formed an intention to convert it to his own use at any time *after he lawfully received possession.* Such a change of plan by a bailee would be embezzlement.[6]

■ Those cases which limit the application of Section 2312 to larceny situations do so on the ground that "stolen" in a technical sense means larceny,[7] the taking of a car without the owner's consent with an intent to deprive him of possession permanently. Since criminal statutes are to be strictly construed against the imposition of criminality, Section 2302 may not encompass the oth-

3. See Murphy v. United States, 5 Cir., 1953, 206 F.2d 571; Ackerson v. United States, 8 Cir., 1950, 185 F.2d 485; Hite v. United States, 10 Cir., 1953, 168 F.2d 973; United States v. O'Carter, D.C.S.D. Iowa 1949, 91 F.Supp. 544; Ex parte Atkinson, D.C.E.D.S.C.1949, 84 F.Supp. 300. Cf. Hand v. United States, 8 Cir., 1955, 227 F.2d 794; Stewart v. United States, 8 Cir., 1945, 151 F.2d 386.

These cases all involve a situation where the owner of the automobile intended to pass title as well as possession but was given a worthless check or a stolen car in trade, a false pretenses crime rather than larceny. However, the reasoning would cover a case where one received lawful possession and later decided to convert the car to his own use, an embezzlement situation.

4. United States v. Sicurella, 2 Cir., 1951, 187 F.2d 533. See Hall and Glueck,

Criminal Law and Enforcement 165–171 (1951) on the development of the law of theft.

5. See Breece v. United States, 6 Cir., 1954, 218 F.2d 819; Wilson v. United States, 6 Cir., 1954, 214 F.2d 313; Collier v. United States, 6 Cir., 1951, 190 F.2d 473; Davilman v. United States, 6 Cir., 1950, 180 F.2d 284; United States v. Adcock, D.C.W.D.Ky.1943, 49 F.Supp. 351. Dictum, United States v. Sicurella, 2 Cir., 1951, 187 F.2d 533.

These cases all involve an embezzlement situation, but their reasoning would appear to encompass fraudulent pretenses as well. But see, Collier v. United States, supra.

6. 29 C.J.S., Embezzlement, §§ 4, 5.

7. Webster's New International Dictionary 2465.

er crimes relating to obtaining or converting personal property.

However, "stolen" in a more general usage includes larceny, larceny by trick, fraudulent pretenses and embezzlement since it means:

"taking the personal property of another for one's own use without right or law, and * * * such a taking can exist whenever the intent to do so comes into existence and is deliberately carried out regardless of how the party so taking the car may have originally come into possession of it."[8]

If it was the purpose of Congress to use the word "stolen" in this more common sense, that plan should not be frustrated by the rule of strict construction against criminality. In 1919 when this statute was passed Congress was concerned with large scale organized automobile theft and the problem of state power ending at the state line.[9] As the Supreme Court observed in a decision upholding the constitutionality of the act,

"The quick passage of the machines into another state helps to conceal the trail of the thieves, gets the stolen property into another police jurisdiction and facilitates the finding of a safer place in which to dispose of the booty at a good price."[10]

Automobile thieves may obtain cars in many ways. Typically an unattended car is taken.[11] However, a thief may give a dealer a worthless check for a certificate of title.[12] A trusted employee of an automobile dealer may have lawful possession of the stock of cars and later take them into another state and wrongfully sell them.[13] These are larceny, false pretenses and embezzlement situations, but the evil is the same. The owner of the car is deprived of it, and state law is ineffective to protect him.

Congress would have no reason to differentiate among the various theft crimes in view of its purposes in enacting Section 2312. The courts should not graft such a distinction on the statute.

■■ Construing "stolen" in Section 2312 to include embezzlement, there is little question that there was sufficient evidence of Smith's intent to convert the car to his own use formed after he obtained possession, to justify sending the case to the jury and to support its verdict of guilty.[14] Smith failed to contact the Home Finance Co. either time he was in Phoenix, he failed to make any payments, he drove the car on an extensive trip without the permission of its legal owner, he changed its license plates and he intimated to his half-brother that the car was stolen. The jury was free to disbelieve his testimony that he had come to California to earn money to make payments on the car.

The judgment is affirmed.

8. United States v. Adcock, D.C.W.D.Ky. 1943, 49 F.Supp. 351, 353. All of the cases in footnote 5 supra, adopting the broader view of the definition of "stolen" in Section 2312 follow the Adcock case. Black's Law Dictionary also takes the view that "to steal" encompasses all theft crimes.

9. See, H.R.Rep.No.312, 66th Cong., 1st Sess. 1, 4, (1919); 58 Cong.Rec. 5470–5478, 6433–6435 (1919).

10. Brooks v. United States, 1925, 267 U. S. 432, 45 S.Ct. 345, 346, 69 L.Ed. 699.

11. It must be conceded that this was the situation which particularly concerned Congress in the debates on the bill, but nothing in those debates is inconsistent with a purpose to include all the theft crimes. See 58 Cong.Rec. 5470–5478, 6433–6435 (1919).

12. See cases cited in Note 3, supra.

13. See United States v. Bucur, 7 Cir., 1952, 194 F.2d 297.

14. See Elwert v. United States, 9 Cir., 231 F.2d 928, and cases cited in Note 5 of that opinion as to the function of this court in reviewing questions of the sufficiency of circumstantial evidence.