Linwood Roberto WHITE, Petitioner,

v.

J. C. TAYLOR, Warden United States Penitentiary, Lewisburg, Pennsylvania, Respondent.

No. 333.

United States District Court
M. D. Pennsylvania.
July 11, 1958.

---

Linwood Roberto White, pro se.

JOHN W. MURPHY, Chief Judge.

Petitioner, in custody, under sentence of this court, on his plea of guilty to a charge of attempted bank robbery and conspiracy to rob, 18 U.S.C. §§ 2113-(a), 2 counts, 2113(d), 371, proceeding pro se in forma pauperis, moves for a writ of habeas corpus, 28 U.S.C. § 2241. In support thereof defendant contends he was illegally arrested, tried, and convicted—more particularly that he was not promptly arraigned; that he was coerced into making a confession; that each of his two court appointed counsel were incompetent in that they did not advise him of his constitutional rights, that they unduly urged him to plead guilty, and led him to believe that some promise had been made as to the length of sentence he would receive.

Since petitioner is entitled to proceed under 28 U.S.C. § 2255, we shall consider his petition as so amended. United States ex rel. Josey v. Humphrey, 3 Cir., 1954, 210 F.2d 826; United States v. Hayman, 1952, 342 U.S. 205, 222, 72 S.Ct. 263, 96 L.Ed. 232; Miller v. United States, 4 Cir., 1956, 239 F.2d 407, 408.

Arraigned in open court with his co-defendants on November 14, 1955, defendant, represented by two court appointed counsel, plead not guilty. November 18, 1955, defendant again appeared in open court, represented by his counsel, and moved the court, orally and in writing, for permission to withdraw his former plea of not guilty and to enter a plea of guilty. During the course of an inquiry into whether or not the change of plea should be permitted, the court explained to the defendant the indict-ment—its contents and meaning, the charge in detail. Defendant spelled out his participation in detail, told of his arrest by the New York State Police, that he gave them a statement. Defendant stated that some time later he was turned over to the Federal Bureau of Investigation, that no one in that organization mistreated him in any way, that he made and signed a statement for them. Toward the end of the colloquy (pp. 36–37 of a 38 page record), the following occurred:

"By the Court: * * *, Mr. White. Did anybody promise you that if you were to plead guilty

\* \* \* you would get any special treatment?

"By the Defendant: No, sir. I wasn't in expectation of anything of that sort. But I would much rather go through with the trial—I mean go through and get my sentence than go before any jury, because I will be found guilty anyway, to my opinion, and I know I am going to jail anyway. That is all I can say.

"By the Court: That is a very frank statement. \* \* \*"

The change of plea was then permitted and a presentence report requested.

The offense was committed September 12, 1955. While attempting escape defendant and his co-defendants were arrested at about 3:00 P.M. by New York State Police for violation inter alia of the New York Firearms Act, McKinney's Consol.Laws, Penal Law, c. 40, § 1897—possession of a sawed off shotgun—and removed to the New York State Police Barracks. About 4:00 P.M. defendant, allegedly as the result of force and threats, made a statement to the New York State Police as to his participation in the day's events.

That evening, upon being questioned by agents of the Federal Bureau of Investigation, defendant made and signed a statement as to his participation in federal offenses. Defendant makes no claim whatsoever of being treated improperly during such questioning; he, in fact, states that the agents of the Federal Bureau of Investigation acted as gentlemen.

About 9:30 P.M. defendant was taken by the New York State Police before a Justice of the Peace, given a hearing and, in default of bail, lodged in the Chemung County Jail at Elmira, New York.

September 12, 1955, prosecution on federal offenses having been authorized by the Assistant United States Attorney for this district, a complaint was filed before a United States Commissioner at Towanda, Pennsylvania, the amount of bail fixed at $5,000, and a federal warrant issued. Service of the federal warrant was withheld awaiting disposition of the State charges.

From September 12 to September 20, defendant, in default of bail, remained in custody of the New York State Police authorities. September 20, defendant was taken by the Chemung County Sheriff before a Justice of the Peace at Big Flats, New York, and, on the request of a Chemung County Assistant District Attorney, the state charges against defendant were dismissed.

Defendant was promptly arrested by the United States Marshal on the federal charges and lodged in the Chemung County Jail at Elmira, New York. September 21, 1955, defendant made one brief addition, concerning an incident which occurred on September 12, to the statement previously given to the agents of the Federal Bureau of Investigation.

There being no United States Commissioner available at Elmira, New York, defendant was on September 22 removed by the United States Marshal to Rochester for arraignment before a United States Commissioner. At the hearing defendant was informed of his rights, granted permission if he desired to obtain counsel. After the arraignment, unable to post the designated bail defendant, in default of bail, was placed in custody in the Monroe County Jail at Rochester, New York, to await his removal to Scranton for trial.

■ At the time defendant was permitted to change his plea the change was allowed on the basis of defendant's statements in open court without any reference whatsoever to, or use having been made of either the statement made to the New York State Police authorities or that given to the FBI agents. The plea of guilty in open court constituted an admission of his guilt, a waiver of all nonjurisdictional defects and defenses, and admitted all facts averred in the indictment. Petitioner therefore cannot be heard to challenge those facts in this proceeding. See United States v. Gallagher, 3 Cir., 1950, 183 F.2d 342, at pages 344, 345.

The lack of merit in defendant's allegations are amply demonstrated by the petition itself and by the record. Finding no merit therein, defendant's petition must be denied.